## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **CRIMINAL ACTIONS** **No. 04-00037-1 and** **No. 04-00037-2** |
| **STEVEN ROBERTS and DANIEL MANGINI,** **Defendants.** | |

## M E M O R A N D U M   &   O R D E R

**Katz, S.J.**                                                            **July 31, 2007**

Before the court are "Defendants' Joint Motion for Reconsideration of Their Request for Clarification or Modification of the Terms of Supervised Release" (Document No. 106), the government's response thereto (Document No. 115), the parties' proposed findings of fact and conclusions of law and supporting affidavits (Documents No. 135, 136, 137, 138, and 139), and the arguments and evidence presented at the hearing on July 31, 2007. For the following reasons, Defendants' Joint Motion will be granted, and Defendants will be granted permission to associate with each other in person and by telephone and mail (including electronic mail) during their periods of supervised release. Defendants shall seek separate permission, however, for any change of residence while on

supervised release.  All other conditions of Defendants' supervised release shall remain in effect.

## I. Findings of Fact

1.  In the years preceding 2003, Defendants Steven Roberts and Daniel Mangini became addicted to and trafficked in methamphetamine.

2.  On December 30, 2003, the government obtained a search warrant to open a package from Arizona addressed to Defendants' shared residence.  The package contained more than 100 grams of a substance that tested positive for methamphetamine.  Agents made a controlled delivery of the package and subsequently executed a search warrant at Defendants' residence, resulting in the discovery of a safe containing additional methamphetamine, packaging and weighing materials, $2,788 in cash, tally sheets for drug sales, and travel documents to Arizona for both Defendants.

3.  Both Defendants were arrested by federal authorities on December 30, 2003.  On January 2, 2004, they were released on bond with multiple conditions, including the condition that they not leave the Eastern District of Pennsylvania without permission.  Despite this condition, Defendants fled to Florida, where they were subsequently recaptured by the United States Marshals Service and returned to the Eastern District of Pennsylvania.

4.  On January 28, 2004, an indictment was returned charging Defendants Roberts and Mangini and a co-defendant Peter Pepe with (1) conspiracy to distribute and possess with intent to distribute methamphetamine, (2) distribution of methamphetamine, and (3) possession of methamphetamine with intent to distribute.

5.  On May 19, 2004, Defendant Mangini pleaded guilty to Count One of the indictment, charging him with conspiracy to distribute and possess with intent to distribute methamphetamine.  On May 25, 2004, Defendant Roberts pleaded guilty to the same offense.  In return for their guilty pleas, the government agreed to dismiss the remaining charges against Defendants Roberts and Mangini.

6.  On September 9, 2004, the court sentenced Defendant Mangini to 18 months' imprisonment, five years of supervised release, and a $100 special assessment.

7.  On September 10, 2004, the court sentenced Defendant Roberts to 30 months' imprisonment, five years of supervised release, and a $100 special assessment.

8.  Neither Defendant Roberts nor Defendant Mangini appealed his conviction or sentence or filed a motion under 28 U.S.C. § 2255.

9.  Defendant Mangini was released from custody on April 29, 2005. Defendant Roberts was released from custody on June 29, 2006.  Both are currently under the supervision of Probation Officer John Sanderson of the United States Probation Office in Reading, Pennsylvania, within the Eastern District of Pennsylvania.

10.  The conditions of supervised release for both Defendants include Standard Condition No. 9, which provides that each Defendant "shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer."

11.  Defendants do not challenge Standard Condition No. 9 on its face, and do not seek to be exempted from it.  Instead, each of them has sought the permission of the Probation Office, consistent with the condition, to have contact with the other.

12.  Prior to their arrest at the end of 2003, Defendants lived together in a committed relationship for 18 years.  They made a home together and built a life together.  They supported one another financially, sharing a joint bank account.  They also supported one another emotionally, each caring for the other

4

when he was sick, celebrating successes and sharing sorrows.  They considered, and still consider, themselves to be spouses.

13.  Defendants were in every way a family.  They even raised a child together, as Defendant Roberts's niece was placed with them as a foster child by the City of Philadelphia Department of Human Services.  The relationship between them was and remains the most significant in each of their lives.

14.  Upon his release from prison in April 2005, with the permission of the Probation Office, Defendant Mangini moved into the home of Defendant Roberts's uncle, where he still resides.  Defendants Roberts and Mangini had planned that Defendant Roberts would move into the same residence when he was released from prison in late June 2006.  When that time came, Defendant Roberts requested permission for this living arrangement from the United States Probation Office and was initially told that the arrangement was approved.  About a week before his release, however, Defendant Roberts was told that he could not live with Defendant Mangini because of the condition of his supervised release that prohibits him from associating with other convicted felons (i.e., Standard Condition No. 9).  Defendant Roberts made alternative arrangements to live with his brother.

15.  The Probation Office denied Defendants Roberts and Mangini's subsequent requests for permission to associate with each other.  On August 27, 2006, Defendant Roberts wrote to Probation Officer Sanderson's supervisor, Charles Donahue.  In the letter, Defendant Roberts stated, "I am asking that you might grant us permission to see and speak to one another and resume living together based on the fact that we were in a relationship for 18 years prior to our arrest."  On September 6, 2006, Supervising Probation Officer Donahue denied the request, stating that "Mr. Mangini has made it clear to Mr. Sanderson that he does not approve of your request.  Furthermore, the U.S. Probation Office's Standard Condition No. 9 precludes felons from associating with each other."

16.  On December 14, 2006, counsel for Defendants Roberts and Mangini wrote a letter to the court, captioned as a Request for Modification of Conditions of Supervised Release, asking that the conditions of release be interpreted so as not to forbid them from communicating and associating with each other for non-criminal purposes.  By Orders dated December 18, 2006 (as to Defendant Mangini) and January 4, 2007 (as to Defendant Roberts), the court denied Defendants' letter request.

17.  On January 4, 2007, Defendants Roberts and Mangini filed a Joint Motion for Reconsideration, with Declarations and an accompanying

6

Memorandum of Law.  On the same date, the United States Probation Office

submitted a memorandum to the court.  In that memorandum, Probation Officer

Sanderson stated that Defendant Mangini had become romantically involved with

another individual since his release from custody, and that Defendant Mangini had

told him that he was not interested in resuming a relationship with Defendant

Roberts.  In the memorandum, Officer Sanderson further stated that "[d]ue to the

above-stated information, it is felt that there is no compelling reason as to why

association should be permitted and that the probation office does not want to set

precedent in this case."

      18.  On January 23, 2007, the government filed a response to

Defendants' Joint Motion for Reconsideration (Document No. 115).  The

government's response included the following paragraph:

> The Probation Office has advised the government that "blanket
> permission" to associate is sometimes granted when the parties are
> blood relatives or family members who reside together.  According to
> the Probation Office, it is their policy not to grant blanket permission
> for felons to associate where the felons, regardless of their sexual
> preference, are not blood relatives and are not spouses or partners
> residing together in a relationship equivalent to or analogous to a
> spousal relationship.  It is the government's understanding that the
> defendants are being treated by the Probation Office in the same way
> that former spouses or estranged spouses would be treated in similar
> circumstances.

Government's Response at 3–4.

19.   The Probation Office therefore took the position that Defendants Roberts and Mangini were not in a relationship that would entitle them to blanket permission to associate.

20.   On January 24, 2007, the court issued a memorandum and order denying Defendants' Joint Motion for Reconsideration.

21.   Defendants Roberts and Mangini filed a Joint Notice of Appeal on February 2, 2007.

22.   After Defendants' appeal was filed, by stipulation of the parties, and with the approval of the court, Defendants filed Supplemental Declarations summarizing the testimony they would have given had a hearing been granted on their Joint Motion for Reconsideration.  In those declarations, Defendants asserted that they do in fact still consider themselves to be a couple.  Defendant Mangini denied that he was romantically involved with another person and stated that he was eager to resume his relationship with Defendant Roberts.

23.   Subsequently, at the direction of the Court of Appeals, the parties met in an effort to clarify the relevant facts.  The parties then agreed to the pertinent facts, which were stated as follows to the Court of Appeals in a letter dated May 21, 2007:

All parties now agree and accept that Mr. Mangini and Mr. Roberts have been for over twenty years and remain, despite the separation that resulted from their incarceration, committed life partners. From the moment of their arrest, each has planned and worked toward the time when they can be reunited. Both men acknowledge that their relationship suffered from their pre-incarceration drug use and each has committed himself to recovery from addiction and the rebuilding of their relationship without that type of destructive influence. Both are well aware that this rebuilding will take time and talking and care, in order to ensure that their future is not only loving but also healthy and long-lasting. The tragedy of Mr. Mangini's development of AIDS has further complicated their plans: Mr. Mangini must plan his life to avoid not only the risk of infection but also the deleterious effects of stress, which directly and dramatically threaten his day-to-day health. Because of these factors, Appellants – and particularly Mr. Mangini – have spoken of the need for them to return to their relationship in a way that is cautious and extremely protective of Mr. Mangini's health. It was Mr. Mangini's statements about this need for caution that led the Probation Office to conclude, understandably but mistakenly, that he did not wish to continue his relationship with Mr. Roberts. All parties now understand and agree that is not the case.

Document No. 137, Exhibit 4.

24. On July 9, 2007, the Court of Appeals vacated the court's January 24, 2007 Order, and remanded for further proceedings consistent with its opinion.

25. Specifically, the Third Circuit held that the court has authority, pursuant to 18 U.S.C. § 3583(e)(2), to consider whether to modify the conditions of Defendants' supervised release in light of "the probation office's refusal to

grant defendants' requests to see one another despite their longstanding intimate relationship." United States v. Roberts, No. 07-1371, slip op. at 10 (3d Cir. July 9, 2007). The Court continued: "We will therefore instruct the District Court that it has the authority on remand, under § 3583, to clarify how the probation office may apply the anti-association condition of defendants' supervised release." Id.

26. The Court of Appeals stated that Defendants do not seek to remove Standard Condition No. 9, but rather to challenge the probation office's application of that condition to their particular circumstances. Id. at 11–12. "We therefore instruct the District Court on remand to address defendants' actual request, which is for modification or clarification of the proper application of the anti-association condition, in light of the probation office's allegedly unlawful exercise of its discretion in a manner that violates 18 U.S.C. § 3583(d)(2) and defendants' constitutional rights." Id. at 13–14.

27. Defendants meet with their probation officer regularly and submit to regular urine tests. These tests have been uniformly negative, indicating an absence of relapse. Defendant Mangini meets with Mr. Sanderson at home because of his health. Defendant Mangini has AIDS and became extremely ill after leaving prison in April 2005. Defendant Roberts sees Mr. Sanderson each week, provides a urine sample, and reports on his current activities.

28.  Both Defendants have maintained clean drug testing records since their release and have otherwise progressed in their rehabilitation and return to society.  Both have undergone drug addiction therapy.  Defendant Roberts has been employed since his release from prison.  Defendants' probation officer has no complaint about their compliance with the terms of their supervised release.

29.  Defendants repeatedly have sought permission to have varying degrees of contact with each other, and their requests have been uniformly denied.

30.  The prohibition of any association between Defendants has caused great hardship to them and to their families.  Prior to their arrest, Defendants not only shared their lives but also were treated by their own and each other's extended families as a couple which was part of a larger family network. Now that they are denied any contact with each other, regardless of the circumstances, their families must choose whom to invite to family events.  In addition, the now-grown daughter that Defendants raised cannot see her two fathers together.

31.  The separation imposed is particularly harsh in light of the fact that Defendant Mangini is fighting AIDS.  Defendant Mangini is forbidden from seeing or even speaking with the person who has been more important to him than anyone else; the emotional and psychological effect of this separation undermines

11

his physical health and causes him great distress.  Defendant Roberts wants to be able to provide comfort and support to the man with whom he shared most of his life, but is forbidden from contacting Defendant Mangini while knowing that he is facing the most difficult challenge of his life.  Defendant Mangini's doctor has advised him to avoid unnecessary stress, yet the separation from Defendant Roberts enhances his stress.  Defendant Roberts will be on supervised release until June 2011, and he dreads the thought that Defendant Mangini could die of AIDS before then, without the two having been allowed to resume their relationship.

32.  In practice and as applied by the Probation Office, the prohibition imposed by Standard Condition No. 9 – although seemingly subject to case-by-case "permission" – has proven absolute.  Defendants repeatedly have requested, and been denied, permission to see one another for a variety of reasons.  They are not even allowed to talk on the telephone.

33.  Defendants do not seek to have Standard Condition No. 9 deleted.  Instead, they seek to have the court direct or advise the Probation Office to either grant blanket permission for them to associate in person and by telephone and mail (including electronic mail), or at least to begin granting permission for association on a frequent and routine basis.

34. Both Defendants have complied with the terms of their supervision and appear to be committed to recovery from the drug addiction that was the predicate for their offenses.

35. The Probation Office has not expressed any concern that allowing Defendants to associate with one another will increase the likelihood that they will engage in criminal conduct or otherwise violate the terms of their supervised release.

36. The goals of Defendants' supervised release can reasonably be achieved without preventing them from associating with each other. Indeed, it appears that the purposes of their supervised release – especially their rehabilitation and reintegration into society – would be better served if they were permitted to resume their relationship.

37. The government and the Probation Office have proposed allowing Defendants to associate with each other subject to significant restrictions, but they have offered no evidence that eliminating some or all of these restrictions is likely to lead to problems.

## II. Conclusions of Law

1. The court applies the following standard in ruling on a motion for reconsideration:

A federal district court will grant a motion for reconsideration based upon one of three reasons:  "(1) an intervening change in controlling law, (2) the emergence of new evidence not previously available, or (3) the need to correct a clear error of law or to prevent a manifest injustice."  Environ Products, Inc. v. Total Containment, Inc., 951 F. Supp. 57, 62 n.1 (E.D. Pa. 1996); see also Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986) ("The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.").

Gen. Instrument Corp. of Delaware v. Nu-Tek Electronics & Mfg., Inc., 3 F. Supp. 2d 602, 606 (E.D. Pa. 1998).  Defendants present newly discovered evidence and allege clear errors of law in the Orders they are asking the court to reconsider, so the court will address the merits of Defendants' arguments.

2.  As the Court of Appeals made clear in its July 9, 2007 opinion, the court's Orders of December 18, 2006 (Document No. 100 in Civil Action No. 04-37-2) and January 4, 2007 (Document No. 104 in Civil Action No. 04-37-1), which denied Defendants' original Request for Modification of Conditions of Supervised Release (Document No. 103 in Civil Action No. 04-37-1 and Document No. 101 in Civil Action No. 04-37-2) constituted clear errors of law. The court therefore will grant Defendants' Joint Motion for Reconsideration of those Orders in light of the newly discovered evidence presented by Defendants in connection with this proceeding.

3.   Upon reconsideration of Defendants' original Request for Modification of Conditions of Supervised Release, the court will order the following:

      a.  The court's Orders of December 18, 2006 and January 4, 2007, which denied Defendants' original Request for Modification of Conditions of Supervised Release will be vacated;

      b.  The United States Probation Office shall permit Defendants to associate with each other in person and by telephone and mail (including electronic mail) during their periods of supervised release. Defendants shall seek separate permission, however, for any change of residence while on supervised release; and

      c.  All other conditions of Defendants' supervised release shall remain in effect.

4.  As explained below, the court has reached this conclusion through two lines of reasoning, which represent the court's *alternate holdings*.

5.  The court's first alternate holding is that it is necessary to modify Standard Condition No. 9 of each Defendant's supervised release, because this condition, as applied by the Probation Office in this case, is inconsistent with the

15

limitations on conditions of supervised release in 18 U.S.C. § 3583(d) and 18
U.S.C. § 3583(e)(2).

6.   The court's second alternate holding is that it is necessary to
modify Standard Condition No. 9 of each Defendant's supervised release, because
this condition, as applied by the Probation Office in this case, violates each
Defendant's rights of intimate association and equal protection, which are
protected by the Due Process Clause of the Fifth Amendment to the United States
Constitution.

7.   Under neither holding is it necessary for Defendants to establish
extraordinary or compelling circumstances in order to obtain the Probation
Office's permission to associate.

## A.  The Court's First Alternate Holding

8.   As the Court of Appeals instructed in its July 9, 2007 opinion, the
court "has the authority on remand, under § 3583, to clarify how the probation
office may apply the anti-association condition of defendants' supervised release
[i.e., Standard Condition No. 9]." United States v. Roberts, No. 07-1371, slip op.
at 10 (3d Cir. July 9, 2007).

9.   Pursuant to 18 U.S.C. § 3583(d), the court may order any
condition of supervised release to the extent that such condition:

16

> (1) is reasonably related to the factors set forth in section 3553(a)(1),
> (a)(2)(B), (a)(2)(C), and (a)(2)(D);
> (2) involves no greater deprivation of liberty than is reasonably
> necessary for the purposes set forth in section 3553(a)(2)(B),
> (a)(2)(C), and (a)(2)(D); and
> (3) is consistent with any pertinent policy statements issued by the
> Sentencing Commission pursuant to 28 U.S.C. 994(a) . . . .

18 U.S.C. § 3583(d) (2007).  The Probation Office's application of a condition of

supervised release is subject to the same constraints.  See United States v. Smith,

445 F.3d 713, 717–18 (3d Cir. 2006).

   10.  Pursuant to 18 U.S.C. § 3583(e)(2), the court has the authority to

clarify or modify a condition of supervised release after considering the factors set

forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5),

(a)(6), and (a)(7).

   11.  The provisions of 18 U.S.C. § 3553(a) enumerated in 18 U.S.C. §

3583(d) and (e)(2) are:

> (1) the nature and circumstances of the offense and the history and
> characteristics of the defendant;
> (2) the need for the sentence imposed –
>    . . .
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant;
>    and
>    (D) to provide the defendant with needed educational or
>    vocational training, medical care, or other correctional
>    treatment in the most effective manner;
> . . .

17

(4) the kinds of sentence and the sentencing range established for –

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

        (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by Act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement –

    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (2007).

12.   These provisions of law require the court to determine the proper application of Standard Condition No. 9 to Defendants Roberts and Mangini, taking into account the stipulated facts and other facts found by the court.

13.   As noted above, the court, after considering the facts and the relevant statutory factors and requirements, has concluded that Standard Condition No. 9 must be modified.  Put simply, the Probation Office's refusal to grant Defendants permission to associate with each other violates 18 U.S.C. § 3583(d) and 18 U.S.C. § 3583(e)(2), because the evidence shows that there is no supervisory need for their continued separation.  The court therefore will order the United States Probation Office to permit Defendants to associate with each other in person and by telephone and mail (including electronic mail) during their periods of supervised release; will order Defendants to seek separate permission for any change of residence while on supervised release; and will leave unchanged all other conditions of Defendants' supervised release.

14.   The court first will consider the factors and requirements under 18 U.S.C. § 3583(d).  The third requirement – i.e., that Standard Condition No. 9

be "consistent with any pertinent policy statements issued by the Sentencing

Commission pursuant to 28 U.S.C. 994(a)" – is satisfied here.[1]

      15.   The problem with Standard Condition No. 9 lies with the first

and second requirements under 18 U.S.C. § 3583(d) – i.e., that the condition be

"reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B),

(a)(2)(C), and (a)(2)(D)," and that it "involve[] no greater deprivation of liberty

than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B),

(a)(2)(C), and (a)(2)(D)."   The court noted in its January 24, 2007 memorandum

and order that Standard Condition No. 9 *facially* satisfies these requirements.   As

the Court of Appeals made clear, however, Defendants are not challenging

---

[1] The court addressed this point in its January 24, 2007 memorandum and order,
and it adopts the same reasoning here:

> The anti-association condition satisfies the third condition of 18 U.S.C. § 3583(d)
> – i.e., that the condition be "consistent with any pertinent policy statements issued
> by the Sentencing Commission pursuant to 28 U.S.C. 994(a)."  18 U.S.C. §
> 3583(d)(3) (2004); see also U.S. SENTENCING GUIDELINES MANUAL § 5D1.3(c)(9)
> (2003) ("The following 'standard' conditions are recommended for supervised
> release: . . . (9) the defendant shall not associate with any persons engaged in
> criminal activity, and *shall not associate with any person convicted of a felony
> unless granted permission to do so by the probation officer*.") (emphasis added).
> It is also worth noting that the anti-association condition is a "condition set forth
> as a discretionary condition of probation in section 3563(b)(1) through (b)(10) . . .
> ."  18 U.S.C. § 3583(d); see also 18 U.S.C. § 3563(b)(6) ("The court may provide
> . . . that the defendant . . . (6) refrain from frequenting specified kinds of places *or
> from associating unnecessarily with specified persons*.") (emphasis added).

See Document No. 116 at 6 n.1.

Standard Condition No. 9 facially; rather, they are challenging its *application* to

them by the Probation Office.  With this in mind, there are three reasons why

Standard Condition No. 9, as it has been applied by the Probation Office in this

case, violates the first and second requirements of 18 U.S.C. § 3583(d).[2]

      16.  The first and most important reason is the absence of any

significant risk that Defendants will engage in any criminal or otherwise harmful

conduct if they are permitted to associate with each other.  This conclusion is

supported by Defendants' triumph over their addictions, their genuine desire to

lead law-abiding lives, their complete compliance with the conditions of their

supervised release, and the Probation Office's apparent belief that their association

will pose no danger to themselves or others.  The second reason why Standard

Condition No. 9, as applied by the Probation Office, has become unreasonably

restrictive (and therefore not reasonably related to the statutory factors) is

Defendant Mangini's health.  The evidence shows that Defendant Mangini has

AIDS, and that his physical and emotional well-being would improve if he were

allowed to rebuild his relationship with his life partner, Defendant Roberts.  The

evidence also shows that allowing Defendants to associate with each other would

---

     [2] The court will discuss the first and second requirements together, because, at least in the as-applied context, the analyses they entail overlap significantly.

further Defendant Roberts's rehabilitation by discouraging him from returning to the criminal conduct that caused Defendants' separation. Prohibiting all association between Defendants therefore contravenes § 3583(d)'s requirements that Standard Condition No. 9 not be more restrictive than reasonably necessary and be reasonably related to the need "to provide the defendant . . . with needed medical care, or other correctional treatment in the most effective manner." See 18 U.S.C. § 3553(a)(2)(D). The third reason why Standard Condition No. 9, as applied in this case, has become unreasonably restrictive, is that there appears to be no further need to deter Defendants themselves from committing further crimes. Both have served their prison terms and resumed lives that are as normal as possible given their inability to associate with each other. Both also have abandoned the drug addictions that led their offenses in the first place. It is thus unlikely that they will recidivate.

17. The court concedes that granting Defendants "blanket permission" to associate with each other may seem incongruous with the nature and circumstances of Defendants' offenses and the need for their sentences to afford adequate general deterrence to criminal conduct, see 18 U.S.C. § 3553(a)(1), (a)(2)(B), but these concerns are outweighed by the extent to which Standard Condition No. 9, as applied by the Probation Office in this case, has

22

become unhinged from the need for Defendants' conditions of supervised release

to "protect the public from further crimes of the defendant[s]," to specifically deter

Defendants, and to "to provide the defendant . . . with needed medical care, or

other correctional treatment in the most effective manner." See 18 U.S.C. §

3553(a)(2)(B), (a)(2)(C), and (a)(2)(D).  The court therefore holds that 18 U.S.C. §

3583(d) requires that it modify Standard Condition No. 9.

      18.  18 U.S.C. § 3583(e)(2) requires that the court consider the factors

set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5),

(a)(6), and (a)(7) before clarifying or modifying a condition of supervised release.

The court already has considered the factors in 18 U.S.C. § 3553(a)(1), (a)(2)(B),

(a)(2)(C), and (a)(2)(D); the court does not believe that the factors set forth in 18

U.S.C. § 3553(a)(4), (a)(5), (a)(6), and (a)(7) add much to its analysis.  The court

is not aware of any guidance in the Sentencing Guidelines or its policy statements

– i.e., the factors set forth in 18 U.S.C. § 3553(a)(4) and (a)(5) – that would aid its

disposition of Defendants' request.  The need to avoid unwarranted sentencing

disparities among similarly situated defendants – i.e., the factor set forth in 18

U.S.C. § 3553(a)(6) – is present in every case, but the court is unsure of what

weight to accord this factor in this case given its inability to locate any precedent

involving same-sex partners who were co-defendants and who sought

23

modification or clarification of the condition of their supervised release that prohibited them from associating with each other after having been uniformly denied permission to associate by the Probation Office.  Lastly, the factor set forth in 18 U.S.C. § 3553(a)(7) – i.e., the need to provide restitution to any victims of Defendants' offenses – is inapplicable to this case, where Defendants were convicted of drug possession and distribution offenses.

19.  It is one thing to hold, as the court does, that Standard Condition No. 9 must be modified pursuant to 18 U.S.C. § 3583(d) and 18 U.S.C. § 3583(e)(2); it is another thing to hold, as the court does, that Defendants should be granted more or less blanket permission to associate with each other. Nevertheless, it is the court's conclusion that, given the facts of this case, it would be most consistent with the governing statutory structure for the court to (1) order the United States Probation Office to permit Defendants to associate with each other in person and by telephone and mail (including electronic mail) during their periods of supervised release, (2) order Defendants to seek separate permission for any change of residence while on supervised release; and (3) leave unchanged all other conditions of Defendants' supervised release.

## B.  The Court's Second Alternate Holding

20.  As stated above, the court's second alternate holding is that it is necessary to modify Standard Condition No. 9 of each Defendant's supervised release, because this condition, as applied by the Probation Office in this case, violates each Defendant's rights of intimate association and equal protection, which are protected by the Due Process Clause of the Fifth Amendment to the United States Constitution.

21.  The Due Process Clause of the Fifth Amendment to the United States Constitution protects the right to intimate association.  See Lawrence v. Texas, 539 U.S. 558 (2003); Roberts v. U.S. Jaycees, 468 U.S. 609 (1984); Moore v. East Cleveland, 431 U.S. 494 (1977); Eisenstadt v. Baird, 405 U.S. 438 (1972). In other words, the Due Process Clause protects "highly personal" relationships of "deep attachment[] and commitment[]."  Jaycees, 468 U.S. at 618–20.  In Lawrence, the Supreme Court, overruling Bowers v. Hardwick, 478 U.S. 186 (1986), made it clear that same-sex couples are not excluded from this protection. See Lawrence, 539 U.S. at 567 (recognizing that same-sex couples can have "enduring" "personal bonds").

22.  Given the undisputed evidence that Defendants were committed life partners for 18 years before their convictions and continue to be devoted to

one another, Defendants have a constitutionally protected liberty interest in their intimate relationship with each other.

23.  A condition of supervised release that interferes, facially or as applied, with a constitutionally protected relationship may only be upheld if it is narrowly tailored and directly related to deterring crime and protecting the public. See United States v. Loy, 237 F.3d 251, 256 (3d Cir. 2001).

24.  The Loy test is harder to satisfy than the statutory tests in 18 U.S.C. § 3583(d) and 18 U.S.C. § 3583(e)(2).

25.  The statutory tests in 18 U.S.C. § 3583(d) and 18 U.S.C. § 3583(e)(2) require that Standard Condition No. 9 be modified, because the evidence shows that there is no supervisory need for Defendants' continued separation.

26.  The Probation Office's refusal to grant Defendants permission to associate with each other therefore also violates the more demanding Loy test.  In other words, the Probation Office's exercise of its discretion to prohibit Defendants' association where there is no supervisory need to do so is neither directly related to deterring crime and protecting the public nor narrowly tailored to achieve those ends.  Thus, the Probation Office's application of Standard Condition No. 9 to Defendants has violated their right to intimate association.

27.   The Probation Office would, as a matter of office policy, allow Defendants to associate with each other, despite Standard Condition No. 9, if they were legally married, or if they were siblings, or if one Defendant were a parent and the other Defendant were his child.

28.   The Probation Office has violated Defendants' Fifth Amendment right to equal protection by refusing to grant Defendants permission to associate with each other, while maintaining a policy of granting such permission to similarly situated individuals in other kinds of family relationships (i.e., siblings, parent and child, and spouses).  This differential burden on Defendants' fundamental right to intimate association is subject to heightened scrutiny.  See, e.g., Police Dep't of the City of Chicago v. Mosley, 408 U.S. 92 (1972).  Because there is no evidence that association between committed same-sex partners will pose any greater supervisory concern than association between similarly situated family members, this unequal treatment fails any level of constitutional scrutiny.

29.   Given the facts of this case, it would be most consistent with the governing statutory structure, applied in light of the above-mentioned constitutional principles, for the court to (1) order the United States Probation Office to permit Defendants to associate with each other in person and by telephone and mail (including electronic mail) during their periods of supervised

release, (2) order Defendants to seek separate permission for any change of residence while on supervised release; and (3) leave unchanged all other conditions of Defendants' supervised release.

An appropriate Order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **CRIMINAL ACTIONS** |
| | **No. 04-00037-1 and** |
| **STEVEN ROBERTS and DANIEL** | **No. 04-00037-2** |
| **MANGINI,** | |
|   **Defendants.** | |

## O R D E R

**AND NOW**, this 31st day of July, 2007, upon consideration of "Defendants' Joint Motion for Reconsideration of Their Request for Clarification or Modification of the Terms of Supervised Release" (Document No. 106), the government's response thereto (Document No. 115), the parties' proposed findings of fact and conclusions of law and supporting affidavits (Documents No. 135, 136, 137, 138, and 139), and the arguments and evidence presented at the hearing on July 31, 2007, it is hereby **ORDERED** as follows:

    1.  Defendants' Joint Motion is **GRANTED**;

    2.  The court's Orders of December 18, 2006 (Document No. 100 in Civil Action No. 04-37-2) and January 4, 2007 (Document No. 104 in Civil Action No. 04-37-1), which denied Defendants' original Request for Modification of Conditions of Supervised Release (Document No. 103 in Civil Action No. 04-37-1 and Document No. 101 in Civil Action No. 04-37-2), are **VACATED**;

3.   Defendants' original Request for Modification of Conditions of Supervised Release (Document No. 103 in Civil Action No. 04-37-1 and Document No. 101 in Civil Action No. 04-37-2) is **GRANTED**.  The United States Probation Office therefore shall permit Defendants to associate with each other in person and by telephone and mail (including electronic mail) during their periods of supervised release.  Defendants shall seek separate permission, however, for any change of residence while on supervised release; and

4.   All other conditions of Defendants' supervised release shall remain in effect.


**BY THE COURT:**

**/s/ Marvin Katz**

_____

**MARVIN KATZ, S.J.**